Anderson, J.
The plaintiff had a policy of fire insurance la two companies on the same property—one in Old Dominion Insurance Company, and the other in the Connecticut Hartford Insurance Company. In both policies there was a condition against other insurance, prior or subsequent, except with the consent of the company written oh the policy. A part of the property was destroyed by fire soon after the second policy was issued; and this suit was brought against the Old Dominion Company, which issued the first policy, to recover the loss.
Ho objection is made to that policy in its inception. It was valid and operative until it was rendered void, if it were so rendered void, by issuing the second policy. And if it is rendered void thereby, it is because the plaintiff' effected insurance by the second policy on the same property without notice to the defendant company, and without its consent written on the policy. The defendant relies on that as rendering his policy declared on in this suit void. Hut the instrument of evidence on which it relies shows upon its face that it was void if the insured had a prior insurance upon the same property, because no notice of it, nor assent of the second insurer, is written on the policy, as one of its conditions required'. And the very plea of the defendant is an admission that the second insurance is subsequent, and is an insurance on the same property. And that being admitted, the policy shows upon its face, by the terms of the condition on which it was issued, that it is void. Being a void policy, can it annul and render void thejarior policy of the defendant ? Is the condition of the prior policy against subsequent insurance which was to work a forfeiture, a condition against an abortive attempt to effect a subsequent insurance, or an incomplete "and unperfected contract of insurance, which is invalid ? Or, is it a condition against a valid subsequent insurance ? That *181 is the subject of inquiry in this case; and upon it there is some contrariety of opinion.
Some hold that it does not mean insurance, but only, what the subsequent underwriter regarded and treated at the time as insurance. Others hold that the terms of the condition import that a prior policy shall be void if the assured shall make subsequent insurance, which means indemnity, not what he and the underwriter might suppose was insurance, when it was not. The language of the policy is: “ If the assured shall have insurance, or shall hereafter make any other insurance.” Any other insurance than what ? Than that which he is in the act of receiving from the defendant, which was insurance in fact. It was indemnity against loss, and any other insurance means any other indemnity against loss. I think this is the plain and obvious meaning of the language; and that it imports what was the intention of this company I think further appears from the fcrtysecond article annexed to the policy; which is as follows: In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the insured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insracd bears to the whole amount insured thereon,” &c. There is no question that the insured might effect other insurances. The language is not other valid insurances, but simply other insurances; which must have been understood to mean valid, inasmuch as it is provided that there shall be a proportionable abatement from the first policy, if it should be effected. And the insurer must be presumed to have used the term insurance, or other insurance, in the same sense in the former clause in which it uses it in this clause.
The defendant, in stipulating against subsequent insurance upon the pain of forfeiture, cannot be understood as stipulating against any mere attempt to make insu *182 ranee; or what the assured and the subsequent insurer believed to he insured, though it was not such; or an and unperfected contract of insurance. To give it that construction would make it a stipulation, not that the assured was to forfeit his policy if he obtained additional insurance, but should be punished for attempt-big such a thing. It would require a very latitudinous construction to make the language mean that.
Upon what rule of construction can we wrest the language from its natural legal and ordinary import in order to subject the assured to a forfeiture of his indemnity for loss for the benefit of the maker of the policy ? All conditions or exceptions are to be construed most strongly against those in whose favor they are made is an established rule of construction. Why should it be departed from in this case ? It seems to me that there is a peculiar fitness in its application to policies of insurance. The policy is framed by the insurer in the absence of the assured, who inserts the condition for his own benefit without consulting the assured, who drafts it, with all its multifarious conditions and restrictions, to suit itself; and though it be “ an institution necessary for the protection of vast interests embarked in manufacturing and on consignment of goods in warehouses,” and therefore should be upheld, I am not aware of any rule, or respectable precedent, that would warrant a court by construction so to alter, or enlarge, or restrict the meaning of its terms in favor of the insurer—to give to the contract the meaning hereinbefore indicated—not even for the attainment of so desirable an object as to secure diligence, and care, and honesty on the part of the assured in the protection of his property against destruction by fire. And in this case it would seem that such a motive could not have operated in the insertion of the condition in question, inasmuch, as by the forty-second clause, before recited, the effecting other insurances by the assured *183 could be no inducement to carelessness and negligence in the protection of his property against destruction by fire, or to the destruction of it by his own criminal agency.
I am of opinion, therefore, that the condition made by the defendant in the policy which is the foundation of this suit against further insurance is not applicable to an invalid contract for other and additional insurance, and that the policy of the defendant is not avoided by an abortive attempt to make other assurance, which was never completed or perfected.
And in this position I think I am sustained by the overwhelming weight of authority.
Parsons in his work on Maritime Law says: “ Some policies provide that in case of any other insurance on the same property the contract shall be null and void. But the obtaining a policy from another underwriter will not have this effect, if it be void for any cause, although it be on account of the fault of the insured, as by his misrepresentations.” 2 Pars, on Marit. Law, pp. 100-101. .
Flanders on Fire Insurance, pp. 49-50, states the doctrine to be well settled, that if the second policy, against which the contract stipulates, is itself a void one, or one that cannot be enforced, it does not avoid the first, notwithstanding the clause of forfeiture.
May in his work on Insurance, p. 439, states the general principle to be, that subsequent insurance, void by its own terms, because it is additional and without notice of prior insurance, is no insurance within the meaning of the usual condition against other insurances.
Wood on Fire Insurance (the most recent work on this subject), p. 586, § 348, states the doctrine thus: “A condition that if other insurance shall be obtained without the consent of the company the policy shall be void, relates to other valid insurance, and the policy is not *184 avoided by the procurement of-other policies that for any cause are invalid. But the entire invalidity of such insurance must be established. The other policy or policies must at the time of the loss have been inoperative, so that no action could be maintained to enforce them. It is not necessary that they should have been. absolutely void; it is sufficient if they were'voidable.”
These eminent writers cite numerous authorities in support of the doctrine as they have announced it; and they refer to the decisions which are in real or apparent conflict with their enunciation of the doctrine. I have not met with a single text-writer who controverts their views or who holds that the prior policy is avoided by the procurement of other policies which are invalid.
It would be impossible within the limits of an opinion to review all the cases on this subject. I must be content with a reference to the following judicial decisions as fully sustaining the proposition, as a general principle of law, that in order to avoid a policy on account of a subsequent insurance against an express condition therein it must appear that such subsequent insurance is valid and can be enforced. If it cannot be enforced it is no breach of the prior policy. Hubbard & Spencer v. The Hartford F. Ins. Co., 33 Iowa R. 326, supported by a well-considered and able opinion of Beck, J.; Jackson v. Mass. Mutual Fire Ins. Co., 23 Pick. R. 418; Clark v. New England Fire Ins. Co., 6 Cush. R. 342; Gale v. Belknap Ciy. Ins. Co., 41 New H. R. 170; Stavey v. Franklin Fire Ins. Co., 2 Watts & Serg. (Penn.) R. 506; Philbrook v. New England Mut. Fire Ins. Co., 37 Maine R. 187; Schenck v. Mercer County Mut. Fire Ins. Co., 4 Zabr. (N. J.) R. 447; Jackson v. Farmers Mut. Fire Ins. Co., 5 Gray (Mass.) R. 52; Gee v. Cheshire County Mut. F. Ins. Co., 55 New Hamp. R. 65; Rising Sun Ins. Co. v. Slaughter, 20 Ind. R. 520; Thomas & al. v. Builders M. F. Ins. Co., 119 Mass. R. 121; New England Ins. Co. *185 v. Schettler, 38 Ill. R. 166; Knight v. Eureka F. & M. Ins. Co., 26 Ohio St. 664. In the foregoing decisions there is a difference of views upon some questions in relation to the general subject; but with perfect unanimity all of them maintain the proposition hereinbefore announced.
It is held in Philbrook v. New England Mut. Fire Ins. Co. that the prior policy is valid even though the subsequent policy is not avoided by the underwriter issuing it, but the loss thereon is paid, the policy being legally invalid and such as the plaintiff’ could not have enforced.
In Jackson v. Miss. Mutual Fire Ins. Co. it was held that the subsequent insurance must be a valid and legal policy, and effectual and binding upon the insurers. Assuming'itto have been made for the direct benefit of the plaintiffs, it was wholly nugatory and of no effect, and cannot, for this reason, be now set up to defeat the policy made by the defendants.
In Hardy and al. v. Union Mut. F. Ins. Co., 4 Allen, 217, it was held : “If such a second policy was void, it did not vitiate the first. It is open to the plaintiffs to take this ground and deny the validity of the second policy.” In this case it was claimed that the plaintiff's had received since the loss the amount of their stipulated insurance on the subsequent policy. The court said the point of inquiry is, whether in fact, at the time of the loss, the plaintiff's had a valid claim against the defendants on their policy. They had such a claim if the second policy was then invalid, as the taking of an invalid policy did not constitute a breach between the plaintiff's and the defendants in reference to a subsequent policy. The facts which occurred subsequently toAhe loss do not constitute a case of estoppel in favor of the 'defendants.
*186 In Gale v. Belknap Cty. Ins. Co. the court said: “We regal'd the law as settled, that when, in a policy of insuagainst fire, it is stipulated that the policy shall be void if any other or subsequent insurance shall be or be made without the consent of the compan}7 or its directors, and another is made by other insurers without such consent, which contains a similar provision, the second policy is inoperative and invalid—it does not bind the insurers, and therefore does not avoid the first policy.”
In Gee v. Cheshire County Mut. F. Ins. Co., 55 New Hamp. 65, the court said: “Obtaining a nugatory policy in some other company has been held, over and over again, not to constitute any contract at all. It confers no rights on the one hand, and imposes no obligation on the other. It is not a contract; it is a mere nullity.”
In a recent case decided by the Supreme Court of Massachusetts, No. 119 Mass. R. supra, the court said: “ It is for the defendant to show that such instrument (the subsequent policy) was a valid and legal policy, effectual and binding upon the insurers. If it was invalid .so far as the property in question was concerned there would, by legal intendment, be no second insurance upon it, and therefore no avoidance of the first policy. The policy of the Merrimack company, who was to have been the second insurer, was also upon the condition that without the consent of this company no other insurance shall exist upon the property insured by it; and no such consent was given, and the plaintiffs therefore failed to do what was necessary in order that a contract might be perfected with it; and having effected no valid subsequent insurance, they have not avoided the prior policy with the defendant.”
The whole question comes clearly within the decided cases.
*187 In Clark v. New England Fire Ins. Co., 6 Cush. R., supra, the court held that “ if the plaintiffs have failed to perfect their contract with the subsequent underwriters by omitting to have the prior assurance allowed of and specified on the policy, as required, it is difficult to imagine in what way the prior insurance can be invalidated or affected. It is a vain, nugatory, void act.”
Opposed to all this array of authority we refer to David v. The Hartford Ins. Co., 13 Iowa, 69; Bigler v. The New York Central Ins. Co., 20 Barb. R. 635; and same case, 22 New York R. 402; Lackey v. The Georgia Home Ins. Co., 42 Ga. R. 457; and Carpenter v. Providence Washington Ins. Co., 16 Peters R. 495. Other cases have been cited, but need not be specially noticed, as they do not seem to be opposed to the doctrine enunciated. These are the principal cases relied on for the defendant; and upon close inspection I think it will- be found that whilst they are in conflict with some points decided in some of the cases I have cited they have decided nothing in conflict with the position which I have announced, and which is sustained by the vast array of authority to which I have referred.
In the Iowa case of Hubbard & Spencer v. The Hartford F. Ins. Co. it was held that “ a breach of the condition does not absolutely render void and of no effect the policy; it simply renders it voidable, its binding force and effect being subject to be defeated at the option of the company issuing the instruments. If no objection be made by the company on account of the breach of the condition the policy may be enforced as though no forfeiture had ever happened. The act of the company whereby it is shown that the instrument is treated as avoided must be shown in order to defeat recovery thereon. If- no such act or objection *188 on the part of the company be shown, the contract will be considered binding.” But that maybe shown even at the hearing. The supreme court of New Hampshire holds otherwise. In Gale v. Belknap Cty. Ins. Co., 41 New H. R. 176, the court said: “The policy is neither uttei’ly void nor voidable in the sense that it is a valid and binding contract, and to be so treated, for all practical purposes, until it is avoided. On the contrary, it is an instrument invalid and inoperative, binding upon nobody until and unless it should be ratified and confirmed by some further act on the part of the insurer with knowledge of the fact which caused the invalidity either by an express assent to be bound or by some implied waiver of the objections. There is an intrinsic absurdity in holding that to be an insurance by which a party is bound to make good another’s loss only in case he pleases to do it.”
It is not necessary in this case that we should decide between these conflicting opinions. If either be right the plaintiff is entitled to recover; for it appears from the certificate of facts that the plaintiff brought suit against the Connecticut insurance company upon its policy, and that before the trial of this suit, being satisfied that he could not enforce it because of the prior insurance, which rendered it void, he admitted that the said policy Avas void, and dismissed the suit, and offered in open court to cancel the policy. ¥e may infer from the existence of this suit that the resistance of the plaintiff’s demand by the Connecticut insurance company was upon the ground that the policy Avas avoided by reason of the prior insurance, and from the dismission of the suit by the plaintift with the admission that the policy Avas void and the offer to cancel it, that the policy is invalid and cannot be enforced. Consequently the prior policy has not been invalidated and rendered void by.it. And this *189 is held to be the law in Gale v. Belknap Cty. Ins. Co. and all the eases of that class, and is likewise so. held in the Iowa case supra. And in that case Judgé maintains that his conclusion is not in conflict with David v. The Hartford Ins. Co., 13 Iowa, nor with Bigler v. The New York Central Ins. Co., 20 Barb. R. 635, und same case, 22 New York R. 402. In the latter case the suit wTas brought to enforce the prior policy, and was defeated upon the ground that it was avoided by a subsequent policy, which was shown to be valid by a judgment in favor of the assured, and that a draft had been given in satisfaction of the judgment.
In Lackey v. The Georgia Home Ins. Co., 42 Ga. R. 457, the court says: “ The question here turns not so much on the contract as upon our statute. * * * And this law would make void the first policy though nothing was said in it about a second policy.” The case, therefore, the court said, “ turned rather on the law than on the contract.” The remaining case relied on by the defendant’s counsel—of Carpenter v. Providence Washington Ins. Co., 16 Peters R. 495—is not analogous to this case. The suit there was brought against the "Washington Insurance Company to enfore the second policy, which had a condition to be void if the property was insured by a prior policy. The defence was that there was a prior policy of the American Insurance Company, of which the defendant had not been notified. The plaintiff replied that the prior policy was invalid and void because it had been obtained by false representations. The point decided by the supreme court was raised by exceptions to the ruling of the lower court rejecting the plaintiff’s instruction, and to the instruction given by the court; and is thus stated by Mr. Justice Story. He says the instruction offered by the plaintiff “ proceeds on the ground that although the policy of the American In *190 surance Company of 6th December, 1886, ivas good upon its face, yet if, in point of fact, it was procured . by a material misrepresentation by the owners of the cost and value of the premises insured, it was deemed utterly null and void, and therefore, as a null and void policy, notice thereof need not have been given to the .Washington Insurance Company at the time of underwriting the policy declared on. The court refused to give the instruction, and, on the contrary, instructed the jury that if the policy of the American Insurance Company was, when that at the Washington Insurance office.was made, treated by all the parties thereto as a subsisting and valid policy, and had never in fact been avoided (but was still held by the assured as valid), then that notice thereof ought to have been given to the Washington Insurance Company, and if it was. not, the policy declared on was void.” The supreme court held that the court below did not err in refusing to give the instruction moved by the plaintiff, and that the instruction given was correct. This was the only point decided in that case which has any relevancy to this; and Mr. Justice Story in stating reasons for the decision assumes that a policy which has been procured by misrepresentation of material facts is not therefore to be treated in the sense of the law as utterly void ah initio, but is merely voidable, and may be avoided by the underwriters upon due proof of the facts; but until so avoided it must be treated for all practical purposes as a subsisting policy. He says the policy,to this very day has never been avoided, and the assured, if he pleases, may bring action thereon to-morrow. It will also be remarked that these remarks of Judge Story are made only with regard to a policy procured by false representations. Hi a remarks were not 'made with reference to such a case as this. There is no analogy between the two *191 cases. That was a suit by the assured to enforce a subsequent policy which he had effected with another company, and which was resisted by the defendant upon the ground that by the terms of the policy it was void because at the time he had an insurance of the same property in another company, of which he had not notified the defendant; to avoid which defence he alleged that the prior insurance was void because it was procured by those under whom he claimed by misrepresentations of material facts—that is, by fraud. But the supreme court held that inasmuch as it was treated at the time the second policy was issued by all the parties thereto as a subsisting and valid policy, and had never in fact been avoided, but was then held by the assured as valid, it must be regarded as a valid policy until the facts of the fraudulent representation were shown ¡ and Mr. Justice Story remarked that “ it may well be doubted whether a party to a policy can be allowed to set up his own misrepresentations to avoid the obligations deducible from his own contract.”
¥e do not think that any decision made in that case applies adversely to this. The cases are totally unlike. There is no proof or even allegation of fraud or misrepresentation here. The facts certified tend strongly to prove that the plaintiff in effecting the second policy was unconscious of violating any condition in the first policy or of doing anything that he had not a right to do. He seems to have been led into the error by relying on the agent of the company to give him all the information it was necessary for him to have—he having had no experience in such business—who failed, perhaps from inadvertence, to give him this important information. All that has been said against a party taking advantage of his own misrepresentation of material facts, or fraud, has no appli *192 cation to this case. It has not the slightest bearing-upon any principle involved in its decision. Nor is there anything decided by the supreme court in Carpenter v. Providence Washington Ins. Co., 16 Peters R. 436, which is opposed to the doctrine as declared in. this opinion, and which is sustained by the highest courts of nine or ten of the American states, and, we may add, positively denied by none—sustained by courts presided over by a Gibson, a Bigelow, and a Shaw—names which have shed lustre on the judicial ermine—and a doctrine which has been recognized and approved by all the eminent and learned writers on the law of insurance. Are we to be told that a doctrine so fortified and sanctioned by this overwhelming array of authority, and which, we may add, is supported by reason, is to be overturned, not by the decisions of two or three courts, but by the dicta of a. few judges, however eminent ?
The decisions of the supreme court of the United States on questions peculiarly and exclusively belonging to that jurisdiction are a final disposition of the subject; but it is not inconsistent with the profound respect which that august tribunal ought to command to say that the decisions of the supreme courts of the states, when the subject is clearly within the limits of their jurisdiction, are entitled to equal respect; and though we would reverently bow to the authority of a court over which the illustrious Taney presided, and of which a Story was an associate justice, within the exalted sphere of its jurisdiction, we could not regard the dicta or reasoning of one of its justices, however eminent, or even its decision, as outweighing the judgments of the supreme courts of the American states on questions within the limits of their respective jurisdictions.
We do not feel called on to notice further the dicta *193 and reasoning of Judge Story than merely to suggest that that eminent judge, in his high appreciation of the advantage and importance of these insurance institutions, and in his earnest desire to uphold them, as required hy a sound public policy, seems to have been unmindful of the rights of the assured, has been led into the error of giving a construction to the acts and instruments of writing of the insurer which, it seems to us, violates well-established rules of construction, and for which we can find no precedent, and which would impair the rights of the assured, and if adopted and sanctioned hy the courts would thereby do more to discourage insurance and injure those institutions than an adherence to'the established rules of construction.
Upon the whole I am of opinion that the judgment of the court below is erroneous, and that it be reversed with costs.
Moncure, P., and Staples, J., concurred in the opinion of Anderson, J.
Christian, J.
This is a case of first impression in this state. It is one of great importance; not only affecting the interests of every insurance company— now becoming' a large and useful department of business throughout the country—but the case involves questions of public policy in which every community is interested.
The question discussed and decided, in the opinion of the majority, has been the subject of judicial investigation and decisions in many of the states of the Union and in the supreme court of the United States. A cursory examination of the cases will at least show one thing, and that is, that there is an irreconcilable *194 conflict in the authorities on this question. On the one side, the supreme courts of Massachusetts, Pennsylvania, Maine, New Hampshire, and Iowa; on the other side are the supreme courts of New York, Georgia,- and the supreme court of the United States. If this case is to he decided on the authority of cases simply, and my judgment is to he determined by the number of cases instead of their loeight, then I should find myself on the side of the majority; hut no number of cases from other states, however I might respect them as persuasive authority, can hind my judicial action if the cases themselves are not founded upon sound legal principles. I prefer, therefore, to stand on the side of those cases'which are fewer in number hut which are founded upon sound principles of law and reason, which commend themselves to my judgment; and I am pleased to know that that judgment is sustained by such high authority as the supreme court of the United States and the supreme courts of New York and Georgia.
The cases followed by the majority of the court hold that the second policy does not make void the first unless the second be a valid one—one that can be recovered upon; and if the second company’s policy can be shown to be void, even in consequence of the fraudulent representations of the insured, or concealment of the facts, the condition of the first policy is not broken, because there is in fact no second insurance.
The law which permits insurance companies to contract against a second insurance on the same property is founded in a wise public policy. • Such stipulations protect not only the insurance companies but the public against the evils of double insurance. As was said by Judge McCay in Lackey v. The Georgia Some Ins. Co., 42 Ga. R. 457: “It is found that to permit dou *195 hie insurance is to afford a temptation to self-incendiaries, who are a danger in any community. The man who, to get the benefit of an insurance, sets fire to his own property, endangers the property of his neighbor. How, it is just as entirely within this public policy to have a second insurance which one thinks is good as to have one which is really good.” The temptation to incendiarism is just as great in the one case as the other. Hay, the very fact that one has fraudulently obtained an insurance is prima fade a suspicious circumstance ; and the man who deliberately perpetrates a fraud in order to get a double insurance has taken one long step towards that other crime, incendiarism, committed .by one’s self against his own property. The object of the stipulation is to remove the temptation and take away the inducement to fire his own property. This is not done when he thinks he has a good policy or one that is void only in the event his fraud is discovered.
But I insist, with deference, that the cases relied on, and which are now to be followed by this court and settled as the law of this commonwealth, are in violation of fundamental principles which should govern all courts in the adjudication of the rights of parties in that it permits one to set up his own fraud and make that fraud the very basis of his recovery; in that it pemiits one to call upon a court of justice to aid him to impose an obligation upon another by showing that he, the plaintiff', has been guilty of falsehood and fraud, without the proof of which he could not possibly recover. *
To illustrate the doctrine of these numerous cases, so much relied on: A man in the city of Richmond takes out a policy of insurance against fire on his house here in one of the insurance companies in this city. He solemnly stipulates in writing with that *196 company (and that is one of the conditions on which the piolicy is issued) that he will not obtain an insu- . ranee in any other company without notice to and consent of the company. He then goes to another company, in a distant city of the state, or it may be in another state, and takes out another policy of insurance on the same property. He falsely represents to that company that he is not insured in any other, and the policy is issued upon the express condition that he is not insured, and there is a stipulation in the second policy that any previous insurance voids the policy. Towards the one company he has broken his solemn covenant; towards the other he has jiractised misrepresentation, falsehood, and fraud. If his property is destroyed by fire he has a double insurance, and the very temptation which the policy of the law would take away exists; and if his fraud remains undiscovered, if his “ sins do not find him out,” he collects the insurance from both companies. But, according to these cases we are asked to follow, he is safe anyway; ^‘or if his fraud is discovered, and his false and fraudulent misrepresentation is made apparent, the second policy is void, and the very fraud which he committed, and that alone, enables him to impose an obligation upon the first company.
I cannot follow cases, however numerous they may be, which declare a principle so variant with all my preconceived ideas of the true administration of justice as to permit a man to recover only when he establishes his own fraud, and to impose an obligation upon another only when he can show he has been guilty of falsehood.
Instead of following these cases I prefer to stand on the side of the supreme court of the Hnited States when Taney and Story adorned the bench of that august tribunal, and who maintained the very opposite *197 doctrines from those of the numerous decided cases relied on. I wish I had time now to extract from the opinion of Mr. Justice Story in 16 Peters B. to show how his luminous intellect and just mind dealt with this question. But I must content myself now with a mere reference to the case.
But, after all, in my view of the case, it must turn upon a mere question of the construction of the contract of the parties. What is its fair meaning and intent ? When the insured stipulated that he would not effect a policy of insurance in any other company without notice to and consent of the first company, what did he mean then? Can anybody doubt what was his meaning, and what obligation his contract then bound him to observe ? Bid ho sign that contract with the mental reservation that he meant a valid insurance ? with a mental reservation that he would go into another company and effect another insurance fraudulently ? And if he was found out he could say: Well, I have not violated my contract with the first company because I have not effected a valid insurance. By my own fraud, now discovered and proved, T effected no valid insurance in the second company, and therefore the first stands good to me.
Is this a fair mode of interpreting the contracts of parties in a court of justice ? Hot according to the meaning of the parties at the time, but upon extrinsic facts based on falsehood and fraud.
So far as the insured is concerned, he did effect a valid insurance. The premiums he agreed to pay on the second policy could be recovered by the company. Ho one can doubt that. Certainly he could not defeat a recovery by showing ho had perpetrated a fraud on the company. As to him, therefore, the insurance has been effected in the meaning of the law' and the contract of the parties.
*198 The whole reasoning of the cases relied on to sustain this, to me, strange doctrine, is based on a single and they all argue in a circle. It is said that the contract of the party was that he would effect no insurance; that this means no valid insurance; and inasmuch as, by the party’s own falsehood and fraud, he had rendered the second policy void, he has not broken his covenant with the first company. How, technically it maybe true that no second insurance has been effected; hut to give such a construction as this to the contract of the parties seems to me to be sticking in the bark and to invoke a technicality to encourage falsehood and perpetuate fraud.
I have written very hastily, under great pressure, for want of time. The importance of the case and my own strong convictions impelled me to express my dissent from the opinion of the majority at once. I reserve to myself the privilege of writing out more deliberately and at large the views I entertain on this important question.
I am for affirming the judgment of the circuit court.
It is proper to remark that in the present case there is no proof in the record that the plaintiff in error was guilty of toilful misrepresentation and fraud; nor is it intended so to charge him in what I have said. He is permitted, however, in order to assert a claim against the company, to base that claim upon what in law is a fraud upon the other. He is allowed in a court of justice to plead his violated contract with one company to enable him to enforce a claim against another.
In what I have written my purpose was to animadvert upon the principles settled by the cases relied on rather than the conduct of the party in the case before us. It may be true he was guilty of no intentional fraud or misrepresentation, which I am willing to con *199 cede; but that does not change the rights of the parties or their legal obligations.
Burks, J., concurred with Christian, J.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in giving the instruction asked for by the defendant, and in refusing to give the first instruction asked for by the plaintiff, and in overruling the plaintiff’s motion to set aside the verdict and grant him a new trial upon the ground of misdirection to the jury, as hereinbefore indicated. It is therefore considered that the judgment of the circuit court be reversed and annulled, and that the plaintiff in error recover his costs of the defendant in error expended in the prosecution of his writ of error here; and the cause is remanded to the circuit court of the city of Petersburg with instructions to set aside the verdict of the jury and to grant the plaintiff' a new trial, to be proceeded Avith in conformity Avithtlie principles herein declared.
Judgment reversed.